UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN P. MANCULICH,

          v.                                    3:05-cv-1441

RICHARD A. BUCCI, Individually and as Mayor
of the City of Binghamton, New York, The City
of Binghamton, New York, John McHugh,
David S. Chadwick, and John and Jane Does,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## **DECISION and ORDER**

        Plaintiff John Manculich commenced the instant action pursuant to 42 U.S.C. § 1983 seeking to enjoin certain criminal actions commenced against him by Defendants. Presently before the Court is Defendants' motion to dismiss pursuant to FED. R. CIV. P. 12.

**I.    FACTS**

        Plaintiff is the owner of a car rental business in Binghamton, New York. In July 1998, Plaintiff sought to purchase certain property for the purpose of expanding and continuing his car rental and auto repair service. Plaintiff placed certain planters in front of the new property. Plaintiff applied for a zoning variance to operate his business at the the location. On September 15, 2000, the Zoning Board of Appeals ("ZBA") issued a decision granting Plaintiff's request, but with conditions. The conditions included a requirement that Plaintiff construct an eight foot high chain link fence along the length of the western edge of the property and that Plaintiff place a binder coat of asphalt over an existing gravel area. A

primary source of dispute between Plaintiff and the ZBA concerned the City's desire that the planters be removed. Plaintiff believed the conditions imposed by the ZBA to be arbitrary and capricious.

On August 8, 2001, Plaintiff was charged with violating the City Zoning Ordinance. On November 7, 2001, Plaintiff pleaded guilty to this charge and paid a fine. Thereafter, having still not complied with the conditions of the ZBA's decision, Plaintiff submitted various site plan modifications to the ZBA for approval. As is relevant hereto, in September 2003, the ZBA approved Plaintiff's proposed site plan modification, subject to certain conditions. One of the conditions required Plaintiff to remove the planters.

Plaintiff thereafter petitioned the City Council to promulgate a resolution overturning the September 2003 decision of the ZBA with respect to the planters. On March 15, 2004, the City of Binghamton adopted Resolution 04-10 which granted Plaintiff permission to place the planters between the sidewalk and the curb. Resolution 04-10 did not otherwise attempt to modify any other conditions of the ZBA's September 2003 decision. Then Mayor of the City of Binghamton, Defendant Richard Bucci (hereinafter "Mayor Bucci"), vetoed Resolution 04-10. In his veto message, Mayor Bucci stated his belief that, among other things, the City Council did not have the authority to pass an ordinance that had the effect of overruling a decision of the ZBA. Mayor Bucci's veto was ultimately overridden by the City Council.

On December 10, 2004, Defendants initiated criminal proceedings against Plaintiff for alleged violations of City Zoning Ordinance § 1401(f). Plaintiff subsequently moved to dismiss the criminal charges. Defendants opposed the motion. In July 2005, the Binghamton City Court denied Plaintiff's motion to dismiss, but, nevertheless, dismissed the charges on procedural grounds. Specifically, the City Court held as follows:

> The Court finds that the Defendant's motion to dismiss is not valid. Defendant's motion is based upon the Resolution of City Council 04-10. However, after careful review of the Resolution, it indicates that it only refers to one condition [the planters], the September 11, 2003 order contains nine specific conditions. It is the People's contention that the Defendant is in violation of all of the conditions not just the one condition that relates to the City Council Resolution. Therefore, Defendant's motion cannot result in dismissal of the charge.
>
> However, in reviewing the accusatory instrument the Court observed that the accusatory instrument is in fact defective. In particular, the appearance ticket and the accusations of the information are based on the Failure to Comply with the Order of the Zoning Board of Appeals dated September 11, 2003. A reading of the allegations contained in the accusatory instrument refer to an order dated November 2002, not the September 11, 2003 order. It is simply not mentioned in the allegations. The factual allegations are not legally sufficient to support the charge. Therefore, the information is defective on its face and must be dismissed, however it is dismissed without prejudice.

An appeal of this decision is currently pending in Broome County Court.

In October 2005, Defendants initiated criminal proceedings against Plaintiff for alleged violations of City Zoning Ordinance §§ 1302(a) and 1602(a). These charges specifically referenced the September 2003 ZBA decision. These charges are pending.

Plaintiff alleges that the criminal actions instituted by Defendants violate his First Amendment rights to petition government for the redress of grievances and that Defendants' refusal to issue a certificate of occupancy violates his due process rights. Defendants now move to dismiss on the grounds that: (1) the Court should abstain pursuant Younger v. Harris, 401 U.S. 37 (1971); (2) the Court should abstain pursuant to Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941); (3) a favorable result in this action would imply the invalidity of his prior conviction, thereby violating the rule of Heck v. Humphrey, 512 U.S. 477 (1994); (4) Defendants are entitled to absolute immunity; and (5) the Complaints fails to


state a claim upon which relief can be granted. Plaintiff opposes and also requests an evidentiary hearing on the issue of whether Defendants have acted in bad faith.

## II.     Discussion

### a.     Younger Absention

"Under Younger, federal courts, in the interest of comity, must abstain from enjoining pending state court criminal prosecutions and allow state courts to resolve pending matters within their jurisdiction." Washington v. County of Rockland, 373 F.3d 310, 318 (2d Cir. 2004) (referencing Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746 (1971)). "Younger abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003); see also Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 100-01 (2d Cir. 2004).

The first requirement is satisfied here. There are multiple pending state proceedings: (1) an appeal of the 2004 charges; and (2) a pending criminal prosecution arising out of the 2005 charges. The second element also is satisfied. The ability of a municipality to regulate zoning and land use and to protect the public health and safety is an important state interest. Donangelo, Inc. v. Town of Northumberland, 2005 WL 681494, at *2 (N.D.N.Y. 2005) (McCurn, S.J.) (and cases cited therein).

The third element is whether the state proceedings afford Plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims. The "burden of establishing the inadequacy of state proceedings" is on "the party seeking to avoid abstention." Spargo, 351 F.3d at 77. There can be no presumption that the state courts will

not safeguard federal constitutional rights. Id.  Parties are required to "assert any available constitutional defenses in state proceedings unless it is plainly apparent that they are barred from raising such constitutional claims."  Id.  "[A]ny uncertainties as to the scope of state proceedings or the availability of state remedies are generally resolved in favor of abstention."  Id. at 78.  "Accordingly, to avoid abstention, plaintiff[] must demonstrate that state law bars the effective consideration of their constitutional claims."  Id.

Plaintiff has failed to meet his burden.  In his opposition papers, Plaintiff argues that, through the criminal proceedings, Defendants are really seeking a declaratory judgment that the City Council was without authority to overrule the September 2003 decision of the ZBA and that the New York State Supreme Court (and not a city court) has exclusive jurisdiction over declaratory judgments.  Plaintiff argues that:

> The defendants' conduct of initiating two prosecutions against plaintiff and opposing a motion to dismiss that requires a declaratory judgment that the ordinance is invalid (either in whole or in part) permits if not compels the inference that regardless of the outcome of this proceeding, unless relief [is] provided by this Court, the defendant will be able to prolong and vary the enforcement actions and criminal charges against him and repeatedly violate the letter and intent of Resolution 04-10, while covering up the fact that they failed to pursue a proper Article 78 or declaratory judgment proceeding in a timely manner.

Pl.'s Mem. of Law at 10.

The issue here is not whether Defendants may attack the validity of an ordinance through criminal proceedings, but whether Plaintiff may raise his constitutional claims in the pending state court proceedings.  Noticeably absent from Plaintiff's argument is any indication that he is unable to raise his constitutional claims in the proceedings before the County Court (with respect to the pending appeal) and/or the City Court (with respect to the 2005 prosecution).  Defendants, on the other hand, have pointed to case law where city

courts in New York have entertained constitutional claims in connection with pending criminal charges.  See People v. Edinger, 683 N.Y.S.2d 820, 179 Misc.2 104 (City Court, City of Long Beach, 1998); People v. O'Leary, 583 N.Y.S.2d 881, 153 Misc.2d 641 (City Court, City of Oswego, 1992); People v. Morgenstern, 140 Misc.2d 861, 531 N.Y.S.2d 751 (City Cout, City of Rochester, 1988).  Accordingly, all three elements of Younger abstention are present and, unless and exception applies, the Court is required to abstain from adjudicating the present controversy.

### b. Younger Exceptions

Plaintiff contends that Younger abstention should not apply because Defendants have acted in bad faith.  According to Plaintiff, the criminal prosecutions are Defendants' attempt to retaliate against him for seeking relief through the City Council.  Plaintiff similarly argues that Defendants are using the criminal process to resolve a dispute between the Mayor and the City Council concerning the validity of Resolution 04-10.  Plaintiff contends that if Defendants did not believe Resolution 04-10 to be a valid exercise of the City Council's authority, then they should have brought an action pursuant to N.Y.C.P.L.R. Art. 78.  Plaintiff also argues that the 2004 prosecution's failure to refer to the September 2003 ZBA decision was a bad faith effort to avoid the statute of limitations applicable to an Article 78 proceeding to challenge the validity of Resolution 04-10.  In support of his claim that Defendants acted in bad faith, Plaintiff points to certain excerpts from Mayor Bucci's veto of Resolution 04-10, letters from Mayor Bucci, and Defendants' papers submitted in connection with the criminal proceedings.

"Despite the strong policy in favor of abstention, a federal court may nevertheless intervene in a state proceeding upon a showing of bad faith, harassment or any other

unusual circumstance that would call for equitable relief.  However, a plaintiff who seeks to head off Younger abstention bears the burden of establishing that one of the exceptions applies."  Diamond "D" Construction Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) (internal quotations and citation omitted).  "[F]or a federal plaintiff to invoke the bad faith exception, the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome."  Id. at 199 (internal quotation and citation omitted).  "[T]he subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry. . . . A state proceeding that is legitimate in its purposes, but unconstitutional in its execution-even when the violations of constitutional rights are egregious-will not warrant the application of the bad faith exception. . . .To invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive."  Id.

The exhibits submitted by Plaintiff do not evidence a subjective motivation by Defendants to retaliate against Plaintiff for having engaged in protected speech or to otherwise harass Plaintiff.  The fact that the 2004 charges against Plaintiff failed to refer to the September 2003 ZBA decision is not indicative of bad faith.  First, there is no indication that the omission was anything other than a mistake.  This is supported by the fact that, once the Binghamton City Court dismissed the charges as facially invalid (because they failed to refer to the September 2003 ZBA decision), Defendants commenced new criminal charges against Plaintiff specifically referring to the September 2003 ZBA Decision.  In fact, the City Court specifically dismissed the 2004 charges "without prejudice."  Second, the Court fails to see how such an omission, even if intentional, is evidence of bad faith.  Although Plaintiff argues that this was Defendants' attempt to circumvent the statute of limitations for

challenging the validity of Resolution 04-10, as will be discussed below, Defendants had no obligation to challenge the validity of Resolution 04-10 through an Article 78 proceeding. See e.g. Meyers v. Gross, 202 F.3d 282 (10th Cir. 1999) ("While citizens are at liberty to challenge the validity of the laws, if they do so by violating them the police have the right and duty to enforce them until invalidated by repeal or duly constituted court authority.") (table).  Further, the statute of limitations is inapplicable to challenges that legislation is void or beyond the legislators' jurisdiction.  Home Depot USA, Inc. v. Baum, 226 A.D.2d 725, 641 N.Y.S.2d 707 (2d Dep't 1996) ("If an ordinance is adopted without [an affirmative vote of a majority of the board] . . ., the Board's action would be ultra vires and the Statute of Limitations would not preclude a challenge to the Board's jurisdiction with respect to that act."); see also Foy v. Schecter, 1 N.Y.2d 604, 612 (1956).

       Plaintiff's selective quoting from various documents attributable to Defendants fares him no better.  For example, Plaintiff quotes part of Mayor Bucci's veto message wherein he stated that Plaintiff sought relief from the City Council "to avoid compliance with the ZBA's lawful decision," and that Resolution 04-10 was an "administrative reversal of the ZBA by City Council."  Plaintiff also cites a letter by Mayor Bucci wherein he wrote that "[t]he administration continues to maintain the invalidity of Resolution 04-10 and will enforce the decision of the Zoning Board of Appeals."  According to Plaintiff, these documents demonstrate that Defendants knew that Resolution 04-10 overrode the September 2003 ZBA decision, but that they nevertheless decided to prosecute Plaintiff and that they otherwise harbored ill-will towards him, thereby evidencing their bad faith prosecution of him.  This argument must fail.  A full review of the documents referred to by Plaintiff demonstrates Defendants belief that: (1) Plaintiff continued to violate the conditions set forth in the ZBA's

approval of Plaintiff's request for a variance; and (2) the City Council did not have the legal authority to overrule a decision of the ZBA, thereby rendering Resolution 04-10 a legal nullity. It is undisputed that Plaintiff is not in compliance with the conditions imposed by the ZBA. Although Mayor Bucci did write that Plaintiff sough intervention from the City Council to avoid complying with the ZBA decisions, that statement is true. It is not evidence of bad faith. Similarly, although Mayor Bucci wrote "[t]his act [Resolution 04-10] amounts to an administrative reversal of the Zoning Board of Appeals by City Council," it does not indicate his acknowledgment that the City Council had properly overridden the ZBA's decision. In the very next sentences and paragraphs of his veto message, Mayor Bucci explained why he believed the City Council not to have the authority to override a decision of the ZBA. This is not evidence of bad faith. The same reasoning applies to Defendants' opposition to Plaintiff's motion to dismiss the 2004 charges against him. Defendants' position has been consistent - Plaintiff is in violation of the ZBA decision and Resolution 04-10 is void. The undisputed facts demonstrate that Plaintiff has not complied with all the conditions set forth in the ZBA's decision. Aside from Defendants' stating their belief that Plaintiff continued to violate the ZBA's decision and order and that Resolution 04-10 is invalid, none of the exhibits pointed to by Plaintiff demonstrate personal animosity or harassment towards Plaintiff. Rather, they demonstrate Defendants' attempts to enforce a law they believed to be valid. Obviously, Defendants disagreed with Resolution 04-10 and its legal effect, but their position in this regard does not transform their actions in seeking to enforce the decision of the ZBA into bad faith, retaliation, or harassment. The lack of bad faith is supported by the fact that Defendants commenced their prosecutions of Plaintiff for failing to adhere to the conditions in

the ZBA decisions <u>before</u> he turned to the City Council for assistance.[1] Defendants' actions evidence nothing more than their intent to enforce the zoning laws and uphold the determination of the ZBA.

Defendants' belief that Plaintiff was violating the ZBA's decision does not amount to bad faith or harassment. Although Plaintiff believes Resolution 04-10 to have conclusively ended the matter in his favor, Defendants have a different view. As noted, Defendants believe Resolution 04-10 to be a nullity. This belief by Defendants is not unreasonable. The Court is unaware of any New York court decision holding that a city council may override a decision of a ZBA.[2] Similarly, the Court is unaware of any affirmative grant of authority to a city council to overturn a decision of a ZBA. A review of N.Y. GENERAL CITY LAW ART. 5-A suggests that the proper way to challenge a decision of the ZBA is not through legislation by the City Council, but by seeking judicial review pursuant to N.Y.C.P.L.R. ART. 78. See N.Y. GENERAL CITY LAW § 81-C. Stated otherwise, if Plaintiff was aggrieved by the ZBA's decision, he should have availed himself of the procedures provided for in N.Y. General City Law § 81-c (*i.e.* commenced an Article 78 proceeding in Supreme Court) and not sought to circumvent

---

[1] Defendants prosecuted Plaintiff for violating the original conditions set forth in the 2000 ZBA decision. Plaintiff pleaded guilty to those charges. Thereafter, having failed to comply with the conditions in the 2000 ZBA decision, Plaintiff submitted to the ZBA several site plan modifications. As is relevant hereto, those site plan modifications resulted in the 2003 ZBA decision which, among other things, imposed a condition requiring removal of certain potted plants. Defendants commenced other prosecutions against Plaintiff after Resolution 04-10 was adopted. The fact that this is a continuing course of conduct by Defendants to enforce the decisions of the ZBA (which course of conduct commenced well before the adoption of Resolution 04-10) evinces their intention to enforce the zoning laws; not to retaliate against or harass Plaintiff.

[2] Presumably, a city council could change the zoning laws applicable to zoning board of appeal decisions, but that did not happen here.

those procedures through the City Council.[3]  To allow a city council to override the decision of a ZBA appears to be contrary to Article 5-A, see e.g. N.Y. GENERAL CITY LAW § 81(2) (prohibiting any member of the legislative body of the city from serving on the ZBA), and would tend to negate N.Y. GENERAL CITY LAW § 81-c, which provides for judicial review of the actions of the ZBA.  Indeed, in our system of government, the ordinary means by which an individual can challenge executive action effecting him individually is to seek judicial review.  Based on this analysis, it cannot be said that Defendants have no reasonable expectation of a favorable outcome in the state court proceedings or that they have acted in bad faith.  A state court may very well conclude that Resolution 04-10 is without effect and, therefore,

---

[3] The Court rejects Plaintiff's argument that Defendants should have obtained a judicial determination of the validity of Resolution 04-10 before initiating any prosecutions against Plaintiff. If a person is prosecuted under an invalid law, then that person may raise the law's invalidity as a defense or, in certain circumstances, bring a pre-enforcement challenge.  See, e.g. People v. Speakerkits, Inc., 83 N.Y.2d 814, 611 N.Y.S.2d 488 (1994) (providing an example of a defendant raising a constitutional challenge to the validity of an ordinance as a defense).  It is not government's obligation to test the validity of a law in the courts before attempting to enforce it.

Plaintiff's reliance on Vestal-Penn v. Cohen, 59 A.D.2d 594 (3d Dep't 1997), is unavailing.  That case held that a zoning board of appeals is not empowered to determine the validity of a zoning ordinance and, therefore, a litigant challenging a zoning ordinance need not appeal to the zoning board of appeals before resorting to a court. It is difficult to discern what relevance Vestal-Penn has to Plaintiff's position.  Here, the ZBA was not asked to determine the validity of a zoning ordinance. The question is the validity of Resolution 04-10 and the ZBA's September 2003 decision.  Because Plaintiff was aggrieved by the ZBA's September 2003 decision, his remedy was an Article 78 proceeding. Indeed, the plaintiff in Vestal-Penn (and not the municipal defendants) resorted to an Article 78 proceeding to obtain the desired relief (including a declaration that an ordinance enacted by the Binghamton City Council was duly enacted and effective).

Plaintiff continues to violate the decision of the ZBA.[4] See Schlager v. Phillips, 166 F.3d 439, 443 (2d Cir. 1999).

Plaintiff argues that the Court should conduct an evidentiary hearing on the issue of bad faith.  The Court disagrees.  Although there are circumstances where an evidentiary hearing would be necessary to determine disputed issues of fact, see Kern v. Clark, 331 F.3d 9 (2d Cir. 2003), this case does not present any disputed issues of fact going to Defendants' subjective motivation in prosecuting Plaintiff.  Plaintiff fails to identify any disputed facts relevant to the issue of Younger abstention that require an evidentiary hearing.  It is undisputed that: (1) in 2000, the ZBA granted a variance to Plaintiff subject to certain conditions; (2) Plaintiff has not fulfilled all of those conditions; (3) in 2001 Plaintiff was charged with, and pleaded guilty to, violating several conditions of the zoning ordinance; (4) thereafter, Plaintiff petitioned the City Council to adopt a resolution overruling the ZBA decision; (5) in 2003, having not met the conditions set forth in the 2000 ZBA decision, Plaintiff submitted a site plan modification; (6) in September 2003, the ZBA approved the site modification plan upon certain conditions; (7) as of 2004, Plaintiff had not met those conditions; (8) in 2004, the City Council adopted Resolution 04-10 which granted him

---

[4] Moreover, the validity of Resolution 04-10 may well be irrelevant.  In deciding Plaintiff's motion to dismiss the 2004 charges against him on the ground of Resolution 04-10, the Binghamton City Court held as follows:

> The Court finds that the Defendant's motion to dismiss is not valid.  Defendant's motion is based upon the Resolution of City Council 04-10.  However, after careful review of the Resolution, it indicates that it only refers to one conditions, the September 11, 2003 order contains nine specific conditions.  It is the People's claim that the Defendant is in violation of all of the conditions not just the one condition that relates to the City Council Resolution.  Therefore, Defendant's motion cannot result in a dismissal of the charge.

The fact that the charges against Plaintiff involve violations of conditions other than the potted plant condition and that the City Court denied Plaintiff's motion to dismiss the charges on the ground of Resolution 04-10 further evidence that there is a likelihood that Defendants could prevail in state court and that Defendants have a legitimate basis upon which to prosecute Plaintiff.

permission to keep the planters in place[5]; (9) in March 2004, Mayor Bucci vetoed resolution 04-10 on several grounds, many of which dealt with his belief that the City Council did not have the authority to override a decision of the ZBA; (10) the City Council overrode Mayor Bucci's veto; (11) in December 2004, Plaintiff was charged for failure to comply with the September 2003 decision of the ZBA; (12) in July 2005, the Binghamton City Court dismissed the charges against Plaintiff without prejudice as facially invalid, but declined to dismiss the charges because of Resolution 04-10; (13) an appeal of the Binghamton City Court decision is pending; and (14) in October 2005, Defendants charged Plaintiff with failing to comply with the conditions of the September 2003 ZBA decision, which action is pending. It also is undisputed that Plaintiff believes Resolution 04-10 to be a valid exercise of the City Council's jurisdiction, whereas Defendants believe it is not.  The only dispute between the parties concerns a legal issue - the validity and effect of Resolution 04-10.  Although Plaintiff engages in conjecture and surmise concerning Defendants' motivation, as previously discussed, nothing about the above-mentioned facts suggests that Defendants acted with an improper motive.  Accordingly, the Court finds that Plaintiff has failed to establish an exception to Younger abstention or the need for an evidentiary hearing on this issue.

---

[5] The September 2003 ZBA approval required, among other things, that Plaintiff remove certain planters from the City's right-of-way onto his property.  Resolution 04-10 provided that Plaintiff had "permission . . . to place potted trees between the sidewalk and the curb at the front of his business. . . ."  Resolution 04-10 did not purport to overrule the ZBA's decision in any other way.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss on the grounds of Younger abstention is GRANTED. Plaintiff's cross-motion for an evidentiary hearing is DENIED. Having determined that Younger abstention applies, the Court need not address Defendants' remaining bases for dismissal. The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

Dated: April 25, 2006

_____
Thomas J. McAvoy
Senior, U.S. District Judge